"The question is, what is the legal effect, in the context of a workers' compensation claim [for occupational disease], of evidence that claimant's work-related exposure did not cause, but probably aggravated, the [condition] so as to produce additional permanent impairment . . . . The answer is that, standing alone, such evidence has no legal effect.
"Physical impairment alone is not compensable under the Act. For any physical impairment, including that caused by an occupational disease, to be compensable under the Act, it must be shown that the impairment has caused the claimant to have an incapacity for work. N.C. Gen. Stat. 97-2(9), 97-29 and 97-30
(1991). . . . To insure this causal relationship between conditions of the workplace and the claimant's incapacity to work . . ., it must be shown factually that claimant's `occupational exposure was such a significant factor in the disease's development that without it the disease would not have developed to such an extent that it caused the physical disability which resulted in claimant's incapacity for work.' Rutledge v. Tultex Corp., 308 N.C. [85], at 102, 301 S.E.2d [359], at 370. . . . [I]t must be shown factually that but for workplace aggravation of the non-occupational disease there would not have been the same incapacity for work for which compensation is sought. Stated another way, if the same incapacity for work for which compensation is sought would have resulted because of the non-occupational disease itself, unaggravated by workplace conditions, there can be no compensation under the Act, even if workplace conditions, from a medical standpoint, aggravate the disease." Wilkins v. J.P. Stevens Co., 333 N.C. 449, 453-54,426 S.E.2d 675 (1993).
It is clear from plaintiff's medical records that she suffered from the symptoms she associated with the workplace exposures long before and after them, and that the "allergic load" that Dr. Ward described might well have reached the disabling level without them. The irritant most clearly identified — formaldehyde — is notably present in clothing and in mobile homes, such as the claimant's. The greater weight of the evidence in this record will not support a finding that "claimant's `occupational exposure was such a significant factor in the disease's development that without it the disease would not have developed to such an extent that it caused the physical disability which resulted in claimant's incapacity for work.'"
Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to reconsider the evidence, receive further evidence, or rehear the parties or their representatives, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner, with minor modifications, as follows:
The following were entered into by the parties at the hearing before the Deputy Commissioner as
STIPULATIONS
1. On the dates involved, the parties were bound by and subject to the North Carolina Workers' Compensation Act.
2. On said date(s) the employer-employee relationship existed between the parties.
3. As of said date(s) the defendant was a duly qualified self-insurer under the provisions of the North Carolina Workers' Compensation Act.
4. On said date the plaintiff was earning an average weekly wage to be determined from a North Carolina Industrial Commission Form 22, Wage Chart, to be provided by the defendant(s).
5. That the issues to be determined in this case are:
 a. Has the plaintiff sustained an occupational disease arising out of and in the course of her employment with the defendant-employer; and,
 b. If so, are the plaintiff's complaints caused by and result from said occupational disease; and,
 c. If so, to what compensation, if any, is the plaintiff entitled under the Act.
6. The parties further stipulate into evidence approximately 20 pages of medical records.
At the hearing before the Deputy Commissioner on May 5, 1993, the parties introduced the following exhibits:
1. Plaintiff's Exhibit 1, marked P1, consisting of a list of materials given to the plaintiff by her supervisor, to which the defendant objects.
2. Plaintiff's Exhibit 2, marked P2, consisting of Material Safety Data Sheets to which the defendant objects.
3. Plaintiff's Exhibit 3, marked P3, consisting of a list of materials used by Orkin Pest Control Company to which defendant objects.
4. Plaintiff's Exhibit 4, marked P4, consisting of a doctor's work release dated July 9, 1992 to which the defendant objects.
5. Plaintiff's Exhibit 5, marked P5, consisting of an Accident Report dated July 9, 1992.
6. Plaintiff's Exhibit 6, marked P6, consisting of a document dated October 29, 1991 in reference to fumes in construction areas.
7. Plaintiff's Exhibit 7, marked P7, consisting of labels from paint buckets to which the defendant objects.
8. Plaintiff's Exhibit 8, marked D8, consisting of a list of plaintiff's medication since February 1989.
9. Defendant's Exhibit 1, marked D1, consisting of documents concerning the remodeling at City Hall of March 1, 1990.
Subsequent to the hearing on May 5, 1993, the parties entered the following documentation into the record:
1. Deposition of Walter Ward, M.D. dated June 9, 1993.
2. Deposition of Leslie A. Smart, M.D. dated May 13, 1993.
3. Deposition of James McCarrick, Jr., M.D. dated May 28, 1993.
4. Deposition of John Atwater, Jr., M.D. dated May 24, 1993.
* * * * * * * * * * * *
Based upon all the competent credible evidence of record, the Full Commission makes the following
FINDINGS OF FACT
1. The plaintiff, 37 years of age at the time of the hearing before the Deputy Commissioner, with an eleventh grade education, began working for the defendant in March of 1974 and last worked for said defendant July 9, 1992. She began as an elevator operator. In July 1987, was promoted to Service Supervisor, with responsibility for the elevator crew, snack bar, mail room and general maintenance of the defendant's City Hall building.
2. The defendant, City of Asheville, as a part of its governmental functions, maintains and operates the City Hall, a public building, as the main office building for the housing of the offices of the City Government.
3. In January and February, 1989, the first floor and lobby area was painted. Defendant had done a general painting of the City Hall in 1987 and installation of two lavatories on the second floor in 1988. In March of 1990, the defendant began the renovation and redecorating of City Hall building by removing and rebuilding partitions and walls, painting, cleaning, recarpeting and generally changing and improving the internal structure and appearance of the said City Hall.
4. In carrying out these renovations, the defendant used materials, including building supplies, paints chemicals and other materials containing formaldehyde produced by manufacturers in the general economy and sold to the general public as well as the defendant on the open market in the usual course of business.
5. During the course of the renovations begun in January 1989, the plaintiff was exposed to dust and the smells and fumes of paint and other materials used in said renovations. She was physically irritated by said materials, and suffered colds, headaches, nervousness, sore throat, weakness, various rashes, stomach cramps, laryngitis and dizziness, which she associated with this exposure. On July 9, 1992, plaintiff terminated her employment with the defendant because of her physical condition and symptoms. Plaintiff had no greater exposure to the subject substances than many co-employees and members of the public that spent comparable amounts of time the building.
6. Prior to January 1989, the plaintiff visited the City Hall infirmary approximately 168 times with such physical reactions as listed above, including ear problems, dizziness, cramps, nausea, headache, rashes, nervousness, watery or puffy eyes and sore throat. Subsequent to the termination of her employment with the defendant, plaintiff continued to suffer with such discomforting physical symptoms from such exposures as grass mowing; perfumes; odors in department stores, grocery stores and other mercantile businesses; and petroleum smells.
7. Prior and subsequent to January 1989, the plaintiff has been medically examined, diagnosed and treated as suffering from the above listed disorders and symptoms, and it has been medically opined that she suffers from these disorders as the result of her exposure to common chemical substances also contained in the materials used in the renovation of City Hall, as well as other chemicals, substances and odors found elsewhere in the environment in which she lives, including the house trailer where she makes her home, the automobile she drives, motor vehicle traffic, smells in clothing departments, grocery stores, and mercantile establishments she frequents.
8. The materials, paints and chemicals used by the defendant in the renovation of its public building beginning in January of 1989 and their properties tending to cause an allergic reaction in the plaintiff were not peculiar to the defendant's business so as to place the plaintiff at an increased risk of developing such a sensitivity than the general public.
9. Plaintiff's workplace exposures did not cause or contribute to the development of her allergic sensitivity.
10. The plaintiff has not contracted an occupational disease arising out of and in the course and scope of her employment with the defendant.
* * * * * * * * *
Based on the foregoing findings of fact, the Full Commission makes the following additional
CONCLUSIONS OF LAW
The plaintiff has not suffered from an occupational disease within the meaning of the North Carolina Workers' Compensation Act. N.C. Gen. Stat. § 97-53 (13); Wilkins v. J.P. Stevens Co.,333 N.C. 449, 453-54, 426 S.E.2d 675 (1993).
* * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following
AWARD
1. The plaintiff's claim for benefits under the North Carolina Workers' Compensation Act must be, and hereby is, denied.
2. Each party shall bear its own costs.
 S/ __________________ J. RANDOLPH WARD COMMISSIONER
CONCURRING:
S/ __________________ J. HOWARD BUNN, JR. CHAIRMAN
S/ __________________ DOUGLAS E. BERGER DEPUTY COMMISSIONER
JRW:md 5/22/95; 4/4/97